GRINNELL (CROSBY v.). See Case No. 3,422.

# Case No. 5,831.

GRINNELL et al. v. LAWRENCE.

[1 Blatchf. 346;[1] 19 Hunt, Mer. Mag. 533.]

Circuit Court, S. D. New York.    Sept. 30, 1848.

CUSTOMS DUTIES—DUTIABLE VALUE—PENALTIES.

1. A cargo of Canton goods was shipped from Canton to London, and thence to New-York. In collecting duties on them the freight from Canton to London was added as part of the dutiable value: *Held*, that this charge was not authorized by section 16 of the tariff act of August 30, 1842 (5 Stat. 563).

[Applied in Wilbur v. Lawrence, Case No. 17,635; Griswold v. Maxwell, Id. 5,838. Cited in Gant v. Peaslee, Id. 5,212; Millar v. Millar, Id. 9,546; Harding v. Whitney, Id. 6,052.]

2. *Held*, also, that even if this freight were a proper charge, it would form no part of the "appraised value" of the goods, and its addition would not authorize the imposition of the 20 per cent. penalty under section 8 of the act of July 30, 1846 (9 Stat. 43).

[Cited in Wilson v. Maxwell, Case No. 17,824; Cobb v. Hamlin, Id. 2,922.]

This was an action to recover back an alleged excess of duties paid to the defendant [Cornelius W. Lawrence], as collector of the port of New-York.

On the 15th of November, 1847, the plaintiffs [Henry Grinnell and others] shipped from London to New-York, in the ship American Eagle, 1050 rolls of Canton matting, containing 42,000 yards, at the cost of $3,880. A commission of 2½ per cent. was added, making a total of $3,977, on which a duty of 25 per cent. was charged, amounting to $994.25. The entry was made at the custom-house from the original invoice which accompanied

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

the goods when shipped from Canton to London on the 10th of August, 1846. This invoice also accompanied the goods on their reshipment from London to New-York. On the entry of the goods at New-York, the collector directed the appraisers to report the charges upon each roll of the matting, and they reported, accordingly, to be charged on each, $1 50 for freight from Canton to London, making the additional sum of $1,575, upon which duties were chargeable, which, at 25 per cent., amounted to $393 75. It being claimed that the appraised value of $5,552, (which included the addition of the charges for freight from Canton to London,) exceeded, by ten per cent., the value. $3,977, as entered at the custom-house, a duty of 20 per cent. on such amended value was also imposed and charged by way of penalty, under section 8 of the act of July 30, 1846 (9 Stat. 43), which amounted to $1,110 40. The aggregate amount of duties, including the penalty of 20 per cent. thus charged upon the Canton matting, was $2,498 40. The sum of $393 75, the duty on the charges for freight from Canton to London, and also the $1,110 40 imposed by way of penalty, making the sum of $1,504.-15, was paid to the collector under protest. There was also shipped, at the same time, and in the same vessel, a quantity of crape shawls, which were entered at a cost, including charges and commissions, of $4,079 47, and charged with a duty of 30 per cent. amounting to $1,223 84. These articles had also been shipped from Canton to London, and reshipped by the plaintiffs [Henry Grinnell and others] to New-York. The charges for freight from Canton to London were added to the entry, amounting to $102, on which a duty of 30 per cent. was exacted, amounting to $30 60. This sum, also, was paid under protest, making an aggregate of $1,534 75, with interest from the time of payment, which the plaintiffs claimed to recover, and for which a verdict was taken subject to the opinion of the court.

Daniel Lord. for plaintiffs.
Benjamin F. Butler, (Dist. Atty.,) for defendant.

NELSON, Circuit Justice. The charges for freight of the goods from Canton to London were not authorized, by any of the existing tariff acts, to be added to form the ad valorem dutiable value. The act of July 30, 1846 (9 Stat. 42), did not prescribe the mode of arriving at the dutiable value of the goods, but referred to the existing enactments on that subject. These will be found in the provisions of the act of August 30th, 1842 (5 Stat. 548). The sixteenth section of the latter act provides, that it shall be the duty of the collector to cause the actual market value, or wholesale price of the goods, at the time when purchased, in the principal markets of the country from which the same shall have been imported into the United States, to be appraised and ascertained, and to such value or price shall be added all costs and charges except insurance, and including, in every case, a charge for commissions, as the true value at the port where the same may be entered, upon which the duties shall be assessed. It is clear that the costs and charges here referred to, mean those that have been incurred subsequent to the purchase of the goods, and in the course of their shipment to the United States; not costs or charges that may have been incurred in any previous shipment of them to the place whence they were exported to this country. The latter enter into and form constituent parts of the market value, or wholesale price of the goods at the place of exportation. To add them again, would be including the same charges twice, in fixing the valuation. The market value of goods at a given port, includes all previous costs and charges of production, and of transportation to and delivery at that market.

Then follows the proviso to the section, that in all cases where the goods shall have been imported into the United States from a country in which the same shall not have been manufactured or produced, the foreign value shall be appraised and estimated according to the current market value or wholesale price of similar articles at the principal markets of the country of production or manufacture, at the time of the exportation to the United States. This proviso is to be construed with reference to and in connection with the enacting clause, and not as an independent provision. If it were construed according to the latter view, then no charges would be admissible, as none are provided for. But, taken in connection with the previous clause, it is, in legal effect, a substitution, in all cases of shipments of goods from a place other than the country of production or manufacture, of their current market value in that country instead of their market value at the place of exportation.

The general rule given for the appraisal is the market value or wholesale price at the time of the purchase, in the principal markets of the place whence the goods are imported. The exception is where the goods are the production of some other country, when their current market value in that country is to be taken. In each case the costs and charges are to be added, as prescribed in the enacting clause; and the costs and charges in both cases are those which have been incurred at the port of shipment. The current market value at the principal markets of the country of production, was, doubtless, regarded by congress as affording, upon the whole, a fairer and more uniform measure of value, than the market value at the place of shipment; and, therefore, that measure was substituted in the particular case thus provided for, leaving the costs and charges the same in both cases.

The principle of this proviso was first in-

corporated into the act of March 1, 1823 (3 Stat. 729). The fifth section of that act provided, that to the actual cost of the goods, if purchased, or the actual value, if otherwise procured, at the time and place when and where purchased or procured, or to the appraised value, if appraised, should be added all charges, except insurance; provided, that in all cases where the goods should have been imported from a country other than that of their production, the appraisers should value the same at their current value in the country where they were produced or manufactured. This was a simple substitution of one measure of valuation for another, in case the goods were shipped from a country different from that of their production. The costs and charges remained the same. The same remarks are true of the acts of May 19, 1828, and of July 14, 1832 (4 Stat. p. 273, § 8, and Id. pp. 591, 593, §§ 7, 15.) There was, therefore, no authority for adding the freight of the goods in question from Canton to London, as part of the charges in fixing the dutiable value.

But if otherwise, and the freight was properly added, the penalty of 20 per cent. was not chargeable. The eighth section of the act of July 30th, 1846, imposes this duty in cases where the appraised value of the goods imported shall exceed, by ten per cent. or more, the value as declared in the entry. The "appraised value," as used in this act of 1846, and in that of August 30th, 1842, and, indeed, in all of the revenue acts, means the value of the goods to be estimated and ascertained by the appraisers, either according to the "actual cost," "actual value," or "market value," as the case may be, exclusive of charges. To this value, thus ascertained, charges are to be added, in making up the dutiable value. Charges are not appraised, but are ascertained, and added to the appraisal. This is especially so provided in the sixteenth section of the act of 1842. It directs the goods to be appraised, and to the value thus ascertained are to be added the costs and charges. The eighth section of the act of 1846, in question, is to be read in connection with this sixteenth section of the act of 1842. Independently of the charge for freight, the appraised value of the Canton matting not only did not exceed, by ten per cent., the value as entered at the custom-house, but was admitted to be correct. The case, therefore, did not arise which justified the imposition of the 20 per cent. penalty under the eighth section of the act of 1846. The plaintiffs are entitled to recover back, not only the amount of the penalty, but also the duties charged on the freight from Canton to London, with interest from the time of payment.

Judgment for plaintiffs.